IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| **THE ESTATE OF MARCUS SIMMONS, Deceased**, by and through LAUREN SIMMONS, Putative Administrator of the Estate; LAUREN SIMMONS, Individually; GLORIA SIMMONS, Mother and Wrongful Death Beneficiary, Plaintiffs, <br><br> v. <br><br> JOHN DOE OFFICERS 1 to 5, in their individual capacities; HOPKINS COUNTY, TEXAS; LEWIS TATUM, Sheriff of Hopkins County, Texas, in his official capacity; CHRISTUS MOTHER FRANCES HOSPITAL SULPHUR SPRINGS, <br><br> Defendants. | § § § § § § § § § § § § § § | Civil Action No. _____ <br><br><br><br><br><br> **COMPLAINT AND JURY DEMAND** |

**TO THE HONORABLE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION:**

Plaintiffs, by and through undersigned counsel, respectfully submit this Complaint and Jury

Demand to this Honorable Court and allege as follows:

1

## I. JURISDICTION AND VENUE

1. This action arises under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in the Eastern District of Texas, Sherman Division under 28 U.S.C. § 1391 because the events giving rise to these claims occurred in Sulphur Springs, Hopkins County, Texas.

## II. PARTIES

4. Plaintiff The Estate of Marcus Simmons is brought by Lauren Simmons, his adult daughter and putative administrator of the Estate.

5. Plaintiff Lauren Simmons is the adult daughter of Marcus Simmons and a wrongful death beneficiary under Texas law.

6. Plaintiff Gloria Simmons is the mother of Marcus Simmons and a wrongful death beneficiary under Texas law.

7. Defendants John Doe Officers 1 to 5 were, at all relevant times, law enforcement officers employed by Hopkins County, Texas, acting under color of state law. Plaintiffs will substitute their true names upon identification through discovery.

8. Defendant Hopkins County, Texas is a municipal entity responsible for the policies, training, supervision, and discipline of its Sheriff's Office.

9. Defendant Lewis Tatum was, at all relevant times, the Sheriff of Hopkins County, Texas and the final policymaker for law enforcement practices within the County. He is sued in his official capacity only.

10. Defendant Christus Mother Frances Hospital Sulphur Springs is a Medicare participating hospital operating an emergency department subject to EMTALA.

---

## III. FACTUAL ALLEGATIONS

### A. Encounter Setting and Absence of Threat

11. Marcus Simmons was already suffering from significant medical illness and compromise at the time he was encountered by Hopkins County officers. He was unclothed, visibly bleeding, confused, disoriented, and exhibiting clear signs of medical distress.

12. Mr. Simmons was unarmed and posed no immediate threat to officers or the public.

13. He did not engage in active resistance, did not threaten officers, and did not attempt to strike, charge, or physically harm any officer.

### B. Choice to Deploy a Taser Instead of De Escalation

14. Rather than employing de escalation techniques or a brief physical pursuit, officers chose to deploy a taser.

3

15. Officers deployed a taser against Mr. Simmons, causing him to fall to the ground. Rather than reassessing his condition, officers deployed a second taser discharge while Mr. Simmons remained naked, bleeding, and visibly compromised.

16. Mr. Simmons audibly screamed and pleaded prior to the second deployment, exhibiting clear signs of pain and distress. Officers nevertheless proceeded without pausing to reassess his medical condition or the necessity of continued force.

## C. Awareness of Medical Crisis

17. During the encounter, officers repeatedly questioned Mr. Simmons about what drugs he was "on" and discussed among themselves that he appeared so impaired that he did not feel pain, despite visible injuries including a torn and bleeding scrotum.

18. These statements reflected awareness of a medical crisis. Despite this awareness, officers failed to transition to a medical response and instead escalated force.

## D. Escalation and Shod Foot Strikes

19. During this phase of the encounter, at least two officers issued conflicting and simultaneous commands, repeatedly directing Mr. Simmons to "turn onto your stomach" while another officer ordered him to "turn onto your back." These commands were shouted in rapid succession while Mr. Simmons was visibly disoriented and impaired. The contradictory commands made meaningful compliance impossible and manufactured the appearance of noncompliance.

20. Rather than pausing to clarify commands or reassess Mr. Simmons's condition, officers escalated force.

21. Because Mr. Simmons was not moving quickly enough to satisfy the officers' demands, despite his visible confusion, medical distress, and physical vulnerability, officers struck him twice with a shod foot to accelerate his movement. The shod foot strikes were not used to neutralize any threat or protect officer safety. They were used to compel faster compliance from a medically compromised individual who was incapable of processing the conflicting commands being issued.

## E. Wrist Manipulation

22. After the taser deployments and shod foot strikes, officers seized Mr. Simmons's wrist and forcibly twisted and manipulated it into a pain compliance position.

23. This force was applied to accelerate compliance rather than for officer safety and after Mr. Simmons was already under officer control.

## F. Handcuffing and Prone Restraint

24. Officers placed Mr. Simmons in handcuffs while he remained naked, bleeding, and covered in bodily waste.

25. After handcuffing him, officers left Mr. Simmons in a prone, face down position. At this point, Mr. Simmons was fully under officer control and posed no threat.

26. Mr. Simmons remained handcuffed in a prone position for approximately two minutes and twelve seconds while exhibiting visible signs of distress.

27. Officers failed to reposition him, failed to monitor his breathing, and failed to summon medical care.

28. As a direct and proximate result of Defendants' continued and unreasonable force during the seizure, Mr. Simmons suffered severe physical pain, respiratory compromise, and constitutional injury independent of his later death.

## G. Hospital Presentations and Discharges

29. Mr. Simmons was transported to Christus Mother Frances Hospital Sulphur Springs in a medically compromised state that had been worsened by the force used against him.

30. The hospital failed to provide an appropriate medical screening examination and failed to stabilize his emergency medical condition before discharging him.

31. After discharge, Mr. Simmons was later found wandering, confused, and unable to care for himself by an unknown concerned individual who returned him to Christus Mother Frances Hospital Sulphur Springs.

32. During this second presentation, Mr. Simmons again exhibited altered mental status and medical instability. The hospital again failed to provide an appropriate medical screening examination and again failed to stabilize him before discharge.

33. The hospital discharged Mr. Simmons a second time despite knowing or having reason to know that he remained confused, medically compromised, and more than ninety miles from home. Because Mr. Simmons was unable to safely arrange transportation, his wife was forced to arrange an Uber to transport him despite his unstable condition.

34. Mr. Simmons's condition continued to deteriorate. He later died days later at another hospital.

**H. Causation and Continuous Chain of Harm**

35. Mr. Simmons was already medically ill and compromised when he was encountered by law enforcement. The force used against him foreseeably aggravated his condition and rendered him medically unstable at the time he was transported to Christus Mother Frances Hospital Sulphur Springs. The hospital's EMTALA obligations were triggered at that point.

36. On two separate presentations, the hospital discharged Mr. Simmons without providing an appropriate medical screening examination and without stabilizing his emergency medical condition. At the time of each discharge, Mr. Simmons remained confused, medically compromised, and unable to safely care for himself. Those discharges placed him in a foreseeable zone of danger and deprived him of timely stabilization and continuity of care.

37. The fact that Mr. Simmons later died days after leaving the hospital does not sever causation. Under EMTALA, liability attaches at the time of an improper discharge of an unstabilized patient. The hospital's repeated failures set in motion a continuing course of deterioration, delayed definitive treatment, and caused a loss of chance for stabilization and recovery. No independent superseding cause intervened to break the causal chain. Defendants' acts and omissions were a direct and proximate cause of the injuries suffered.

## IV. CAUSES OF ACTION

**COUNT I**

**Excessive Force under 42 U.S.C. § 1983**

**COUNT II**

**Failure to Intervene under 42 U.S.C. § 1983**

**COUNT III**

**Violation of EMTALA, 42 U.S.C. § 1395dd**

---

## V. DAMAGES

38. Plaintiffs seek all damages available under federal and Texas law, including survival damages, wrongful death damages, mental anguish, loss of companionship, funeral expenses, and punitive damages against the individual officer Defendants.

---

## VI. JURY DEMAND

39. Plaintiffs demand a trial by jury on all issues so triable.

---